Matter of Bennett v J-Track LLC (2020 NY Slip Op 02520)





Matter of Bennett v J-Track LLC


2020 NY Slip Op 02520


Decided on April 30, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 30, 2020

529287

[*1]In the Matter of the Claim of Timmee Bennett, Claimant,
v
J-Track LLC et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date: March 27, 2020

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Reynolds Fitzgerald, JJ.


Goldberg Segalla, Buffalo (Cory A. DeCresenza of counsel), for appellants.
Letitia James, Attorney General, New York City (Nina M. Sas of counsel), for respondent.



Mulvey, J.
Appeal from a decision of the Workers' Compensation Board, filed November 9, 2018, which ruled, among other things, that claimant did not violate Workers' Compensation Law § 114-a.
On his second day of work for the employer in June 2014, claimant, a heavy-construction laborer, sustained injuries to his left wrist, left elbow, back, neck and shoulders while "[l]ifting a [b]ig [w]heel." Claimant's claim for workers' compensation benefits was established for such injuries, benefits were awarded and various wrist and shoulder surgeries ensued. In March 2017, claimant underwent an independent medical examination (hereinafter IME) and, in conjunction therewith, completed a questionnaire regarding, among other things, the nature and extent of the physical activities he had performed since his accident. Claimant denied working in any capacity since the accident, but acknowledged that he did "things around the house," including "[h]ouse work," "[y]ard work" and lifting five-pound weights. Based upon claimant's responses and a physical examination of claimant, the IME physician concluded that claimant had not reached maximum medical improvement due to ongoing treatment of claimant's right shoulder, found that claimant had a mild to moderate degree of disability and that claimant could return to work with a 10-pound lifting restriction. Over the course of the next several months, claimant's treating physicians opined that claimant remained 100% temporarily totally disabled due — in large measure — to ongoing pain in his shoulders and referred him for physical therapy.
In March 2018, the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) asserted a violation of Workers' Compensation Law § 114-a, contending that it had surveillance videos and investigative reports detailing claimant engaging in what appeared to be work activities. At the conclusion of the hearings that followed, and upon reviewing the surveillance video, a Workers' Compensation Law Judge, among other things, found that claimant violated Workers' Compensation Law § 114-a and disqualified claimant from receiving indemnity benefits. Upon administrative review, the Workers' Compensation Board reversed, finding, among other things, that no statutory violation occurred and updated claimant's awards. This appeal by the carrier ensued.
"Pursuant to Workers' Compensation Law § 114-a (1), a person may be disqualified from receiving workers' compensation benefits when he or she knowingly makes a false statement or representation as to a material fact for the purpose of obtaining such benefits" (Matter of Calabrese v Fortini Inc., 179 AD3d 1279, 1280 [2020] [internal quotation marks and citations omitted]; see Matter of Ledney v Boat-N-RV Warehouse, 174 AD3d 1245, 1246 [2019]; Matter of Smith v Rochester-Genesee Regional Transp. Auth., 174 AD3d 1264, 1267 [2019]). "Whether a claimant has violated Workers' Compensation Law § 114-a is within the province of the Board, which is the sole arbiter of witness credibility, and its decision will not be disturbed if supported by substantial evidence" (Matter of Felicello v Marlboro Cent. Sch. Dist., 178 AD3d 1252, 1253 [2019] [internal quotation marks and citations omitted]; accord Matter of Sidiropoulos v Nassau Intercounty Express, 178 AD3d 1266, 1267 [2019]; Matter of Smith v Rochester-Genesee Regional Transp. Auth., 174 AD3d at 1267) — even if "other proof in the record
. . . could support a contrary conclusion" (Matter of Harrison v Town of Cheektowaga, 155 AD3d 1286, 1288 [2017]; see Matter of Borgal v Rochester-Genesee Regional Transp. Auth., 108 AD3d 914, 915 [2013]).
Here, the carrier offered surveillance videos, investigative reports and the testimony of two private investigators — all depicting or describing the roof repairs admittedly performed by claimant at a residential property that he owns. In these videos, claimant is observed — over the course of two days — retrieving materials from the box truck bearing the name of the contracting company that he formed before he was injured but licensed thereafter, removing shingles from the roof of the property, laying down tar paper and using various hand tools, including a pry bar, hammer and drill. As the Board noted, however, the videos also show claimant working at a relaxed pace with the assistance of a helper, pausing frequently and exhibiting a range of motion that is not inconsistent with the medical evidence in the record. Similarly, claimant is not seen lifting materials in excess of the 10-pound limitation imposed by the IME physician in March 2017.
As for his postaccident activities, claimant testified that he purchased certain properties following his injury, that the properties were intended for use by his grandchildren and had no tenants, and he had no intention to "flip" them. Although claimant acknowledged that he became a licensed contractor and formed a limited liability company following his accident, he testified that the company does not have any employees and that the only work he performed since the accident was routine house, yard and maintenance work on the properties that he owns. Claimant disclosed on the March 2017 IME questionnaire that he could perform his activities of daily living, including housework and yardwork, and was capable of lifting five-pound weights, and claimant testified that, when informed of these activities, his treating physician indicated that this was "good therapy" for claimant to exercise his muscles. Finally, claimant testified that the roof repairs he performed were far less strenuous than the tasks associated with his heavy-construction job.
The Board — in a detailed decision — found that, "[a]lthough the medical evidence clearly show[ed] that . . . claimant [was] totally disabled from his normal heavy-labor job, it [did] not show that he [was] totally disabled from performing the activities of daily living, housework, yardwork or even the home repair depicted on the surveillance video, for a few hours per day, with assistance." The Board expressly credited claimant's testimony regarding the nature and corresponding disclosure of his activities (see Matter of Harrison v Town of Cheektowaga, 155 AD3d at 1288; Matter of Lleshi v DAG Hammarskjold Tower, 123 AD3d 1386, 1387 [2014]), finding that claimant did not misrepresent his medical condition to the IME physician and that claimant's stated capabilities were not inconsistent with the activities depicted on the surveillance videos (see Matter of Eardley v Unatego Cent. Sch. Dist., 153 AD3d 1460, 1461 [2017]; Matter of Cirrincione v Scissors Wizard, 145 AD3d 1325, 1326-1327 [2016]; Matter of Gillan v New York State Dept. of Corrections, 88 AD3d 1035, 1036-1037 [2011]; compare Matter of Angora v Wegmans Food Mkts., Inc., 171 AD3d 1419, 1420-1421 [2019]). As the Board's findings are supported by substantial evidence, they will not be disturbed (see Matter of Sidiropoulos v Nassau Intercounty Express, 178 AD3d at 1268; Matter of Permenter v WRS Envtl. Servs. Inc., 172 AD3d 1837, 1838-1839 [2019]), even though other evidence in the record could support a contrary conclusion. The carrier's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Garry, P.J., Egan Jr., Lynch and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is affirmed, without costs.